UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STATE FARM FIRE AND CASUALTY COMPANY,

Plaintiff,

v.

SEAN H. DOUCETTE, et al.,

Defendants.

CASE NO. C16-5169BHS

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on Plaintiff State Farm Fire & Casualty Company's ("State Farm") motion for summary judgment (Dkt. 16), Defendants Rachel and Sean Doucette's ("Doucettes") motion for summary judgment (Dkt. 18), and Defendant Ilya Dumitrash's, as personal representative of the estate of Iosif Dumitrash ("Estate"), motion for summary judgment (Dkt. 19). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

**I. PROCEDURAL AND FACTUAL BACKGROUND**

In an underlying state court action, the Estate sued Mr. Doucette for the wrongful death of Iosif Dumitrash. Dkt. 1, Exh. A ("State Comp."). The Doucettes filed a claim under their insurance policy with State Farm seeking defense and indemnity. State Farm

1 filed this action seeking a declaration that it has no duty to defend and no duty to

2 indemnify.

3 **A.     The Policy**

4       On May 1, 2012, the Doucettes renewed their homeowners' insurance policy with

5 State Farm covering the period from June 17, 2012 to June 17, 2013.  Dkt. 17,

6 Declaration of Mary R. DeYoung, Exh. F ("Policy").  In relevant part, the Policy

7 provides as follows:

8       **SECTION II – LIABILITY COVERAGE**

9       **COVERAGE L – PERSONAL LIABILITY**

10           If a claim is made or a suit is brought against an insured for damages
      because of bodily injury or property damage to which this coverage applies,
11       caused by an occurrence, we will:
          1. pay up to our limit of liability for the damages for which the
12       insured is legally liable; and
          2. provide a defense at our expense by counsel of our choice. We
13       may make any investigation and settle any claim or suit that we decide is
      appropriate. Our obligation to defend any claim or suit ends when the
14       amount we pay for damages, to effect settlement or satisfy a judgment
      resulting from the occurrence, equals our limit of liability.
15
The coverage is subject to the following exclusion:
16
      **SECTION II – EXCLUSIONS**
17
          1. Coverage L and Coverage M do not apply to
18       a. bodily injury or property damage:
      (1) which is either expected or intended by the insured . . . .
19
The policy contains the following definitions:
20

21

22

ORDER - 2

**DEFINITIONS**

"You" and "your" mean the "named insured" shown in the Declarations. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the Declarations.

* * *

7. "occurrence," when used in Section II of this policy, means an accident, including exposure to conditions, which results in:
   a. bodily injury; or
   b. property damage;
during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

**B.     The Underlying Action**

On July 13, 2015, the Estate filed a lawsuit against Mr. Doucette in Clark County Superior Court for the State of Washington. In relevant part, the complaint alleges as follows:

> [Mr. Dumitrash] spent the evening with his friends drinking alcoholic beverages at his cousin's house. Late in the evening, [Mr. Dumitrash] called a family member because he had become inebriated and could not drive home. When the family member was unable to pick him up, [Mr. Dumitrash] left his cousin's house for a brief walk outside.
> 
> [Mr. Dumitrash] wandered around the neighborhood and onto NE 33rd Street in Vancouver, Clark County, Washington, eventually walking toward [Mr. Doucette]'s residence.
> 
> At approximately 4:00 a.m. on January 29, 2013, [Mr. Doucette] arrived home from his late night shift working as a private security guard. [Mr. Doucette] resides at 14802 NE 33rd Street in Vancouver, Clark County, Washington. [Mr. Doucette] was armed with a loaded Glock Model 17 Gen4 9mm Lugar caliber semi-automatic weapon. Upon arriving to his residence, [Mr. Doucette] walked part way into his front door threshold, whereupon he noticed [Mr. Dumitrash] across the street. [Mr. Doucette] believed [Mr. Dumitrash] was attempting to break into his neighbor's vehicle. [Mr. Doucette] instructed his wife to call law enforcement. Rather than remain inside his home, [Mr. Doucette] proceeded to his front yard in order to confront [Mr. Dumitrash].
> 
> [Mr. Doucette] instructed [Mr. Dumitrash] to remain where he was until law enforcement arrived. [Mr. Dumitrash] walked up to [Mr. Doucette] and the two began a verbal altercation. [Mr. Dumitrash] was

> exhibiting objective signs of intoxication, such as slurred speech and difficulty walking. On information and belief, [Mr. Doucette] not only observed [Mr. Dumitrash]'s intoxication, but also quickly observed [Mr. Dumitrash] was unarmed and did not pose a danger. After a brief verbal altercation, [Mr. Dumitrash] attempted to walk away from the vicinity. [Mr. Doucette]—a former Marine—grabbed [Mr. Dumitrash], subdued him, and further placed him in his custody.
> After detaining [Mr. Dumitrash] and placing him on the ground, [Mr. Doucette] drew his firearm. On information and belief, [Mr. Doucette] allowed [Mr. Dumitrash] to stand up from his seated position, but failed to holster his weapon. [Mr. Dumitrash] again sought to leave the vicinity and [Mr. Doucette] grabbed [Mr. Dumitrash], which resulted in a physical altercation. During this altercation, [Mr. Dumitrash's] firearm discharged multiple times, striking [Mr. Dumitrash] at least once in the chest . . . .

State Comp. at ¶¶ 2.3–2.7.  Mr. Dumitrash died as a result of the gunshots.  Based on these allegations, the Estate brought a wrongful death claim and a survival claim.  *Id.*, ¶¶ 3.1–4.7.  It is uncontested that "[b]oth causes of action assert duties [Mr.] Doucette breached, which brought about injury and/or unreasonable risk of harm to Mr. Dumitrash."  Dkt. 19 at 6.  State Farm, however, does contend that artful drafting clothes intentional tort claims in negligence language.  Dkt. 16.

**C.    Reservation of Rights**

After receiving the underlying lawsuit, Mr. Doucette tendered it to State Farm for defense under the Policy.  On July 30, 2015, State Farm agreed to provide a defense under a reservation of rights.

## II. DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.   Duty to Defend**

"It is well established in this and other jurisdictions that the insurer's duty to defend, unlike its duty to pay, arises when the complaint is filed and is to be determined from the allegations of the complaint." *Holland Am. Ins. Co. v. Nat'l Indem. Co.*, 75 Wn.2d 909, 911 (1969). This duty "is based on the potential for liability." *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wn.2d 751, 760 (2002). Thus, "[i]f the complaint is ambiguous, it will be liberally construed in favor of triggering the insurer's duty to defend." *Id*. (citing *R.A. Hanson Co. v. Aetna Ins. Co.*, 26 Wn. App. 290, 295 (1980)). "Only if the alleged claim is clearly not covered by the policy is the insurer relieved of its duty to defend." *Id*. (citing *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561 (1998)).

In this case, State Farm does not solely rely on the allegations within the four corners of the complaint in making its motion. As both the Doucettes and the Estate contend, the claims in the underlying complaint sound in negligence. Dkt. 22 at 4; Dkt. 21 at 9. For example, the Estate alleges that Mr. Doucette owed numerous duties to the deceased. State Comp. at ¶¶ 3.4, 4.4. Construing the complaint liberally, the Court concludes that the complaint includes negligence claims, which are covered by the policy. State Farm, however, requests the Court to look outside the complaint at evidence that establishes Mr. Doucette's intentional acts. Dkt. 16 at 13 ("The undisputed evidence presented in the criminal action confirmed that Mr. Dumitrash was struck in the chest by four bullets while he was advancing toward Mr. Doucette.").

"There are two exceptions to the rule that the duty to defend must be determined only from the complaint, and both the exceptions favor the insured." *Truck Ins.*, 147 Wn.2d at 761.  Relevant to this case, "facts outside the complaint may be considered if (a) the allegations are in conflict with facts known to or readily ascertainable by the insurer or (b) the allegations of the complaint are ambiguous or inadequate." *Id*. (internal quotations omitted).  However, "an insurer may not rely on facts extrinsic to the complaint in order to deny its duty to defend where, as here, the complaint can be interpreted as triggering the duty to defend. If in doubt, it may file a declaratory action." *Id*.

In this case, the parties dispute the use of facts outside the complaint as well as the consequences of those facts.  First, the Estate argues that, as a matter of law, State Farm may not look outside the four corners of the complaint in challenging its duty to defend. Dkt. 22 at 2. While State Farm may not rely on facts outside the complaint in order to deny its duty to defend, neither the Estate nor the Doucette have submitted any authority for the proposition that the Court is precluded from relying on facts outside the complaint in declaring that State Farm owes no duty to defend.  If the declaratory judgment court was precluded from considering facts outside the complaint, then these actions would be reduced to the simple task of construing the underlying complaint.  For example, assume that an underlying complaint alleges that a particular person committed some negligent act triggering coverage.  Also assume that, after the complaint was filed, the insurer discovers evidence that conclusively proves that the person was jailed in a foreign country at the time of the alleged incident and directly contradict a necessary allegation in

the complaint.  Under the Estate's rationale, the Court would be precluded from using that evidence to enter a declaration that the underlying claim is clearly not covered by the policy.  Although Washington law prevents State Farm from using that extrinsic evidence to initially deny the duty to defend, it is preposterous to argue that the Court is precluded from relying on additional evidence to support a declaration of no duty to defend.  Therefore, the Court will look to the documents from Mr. Doucette's criminal proceeding.

  Second, State Farm argues that Mr. Doucette is judicially estopped from asserting any factual rendition other than Mr. Doucette deliberately shot Mr. Dumitrash in self-defense.  The problem with State Farm's argument is that, even if Mr. Doucette is steadfast in his story of intentional self-defense, the complaint alleges a "physical altercation" and that shots were fired striking Mr. Dumitrash in the chest.  State Comp. at ¶ 2.7.  Thus, liberally construed, there exists a potential for liability under a theory of negligence because State Farm has failed to submit undisputed facts establishing the circumstances surrounding the shooting.  This is not "inconsistent" with Doucette's assertion of self-defense because his current position is that the Estate is suing him for negligence.  It is no secret that juries are unpredictable, and the potential exists for a jury to conclude that the Doucettes are liable for the claims in the complaint.  Until that potential liability is decided in the Doucettes' favor, what Doucetee may or may not

testify to is irrelevant.[1]  Accordingly, the Court concludes that facts outside the complaint are not in "conflict" with allegations in the complaint because two versions of the same story may coexist and must be resolved by a jury.

Third, the cases State Farm cites do not undermine the Court's conclusion because none of them involve a physical altercation when the shooting occurred.  Instead, the cases involve clear and undisputed intentional shootings.  *See Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 96 (1989) ("Brosseau's statement establishes that he pumped the shotgun, aimed it at Anderson, and pulled the trigger."); *Safeco Inc. Co. v. Butler*, 118 Wn.2d 383, 400 (1992) ("It is undisputed that Butler intentionally fired his gun at Zenker's truck"); *Allstate v. Raynor*, 93 Wn. App. 484, 492 ("Milton had entered the Johnson property and started shooting."); *Allstate Ins. Co. v. Bauer*, 96 Wn. App. 11, 12 (1999) ("Bauer claims that the shooting was an accident because he mistakenly believed that the deceased was armed"); *State Farm Fire and Cas. Co. v. Parrella*, 134 Wn. App. 536, 541 (2006) ("Carolanne Potts argues the incident was an accident because Anthony did not intend to hurt her son. But his subjective intent is not relevant.").  Therefore, the Court denies State Farm's motion without prejudice on the issue of a duty to defend because it is possible that the facts alleged in the complaint trigger the potential for liability.

---

[1] Although no party has identified this issue, it seems that Doucette will never change his story that the shooting was intentional.  In Washington, a defendant is not entitled to the defense of self-defense if the force used was accidental, *State v. Gogolin*, 45 Wn. App. 640, 643 (1986), the government dismissed the charges against Doucette without prejudice, Dkt. 17 at 39, and there is no statute of limitations for murder or manslaughter.

1  With regard to the Estate's and the Doucettes' motions, the Court denies these
2  motions because disputed issues of material fact exist.  If State Farm discovers facts to
3  conclusively show that no "altercation" occurred and Doucette fired the fatal shots from
4  some distance, then it appears that Washington law precludes coverage because the
5  shooting would not be an occurrence under the policy.  In the absence of that factual
6  issue being resolved, State Farm is entitled to defending under a reservation of rights.
7  Accordingly, the Court denies the Estate's and the Doucette's motions without prejudice
8  on this issue.

9  **C.   Duty to Indemnify**

10  The duty to indemnify "hinges on the insured's actual liability to the claimant and
11  actual coverage under the policy."  *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53
12  (2007) (citing *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64 (2000)).

13  In this case, all parties seek a ruling on State Farm's duty to indemnify.  The
14  parties' motions, however, are premature.  When actual liability is determined, the Court
15  will address this issue.  Liability may be determined in a number of ways, including jury
16  verdict or a dispositive ruling on the issue of whether Mr. Doucette's actions were
17  intentional.  Until such time, the Court declines to issue advisory opinions on the duty to
18  indemnify.  Therefore, the parties' motions are denied as moot.

19                                        **III. ORDER**

20  Therefore, it is hereby **ORDERED** that (1) on the issue of the duty to defend,
21  State Farm's motion, the Estate's and the Doucette's motions (Dkts. 16, 18, 19) are
22

1  **DENIED without prejudice** and (2) on the issue of the duty to indemnify, all the

2  motions are **DENIED** as premature.

3  Dated this 14th day of September, 2016.

BENJAMIN H. SETTLE
United States District Judge